UNITED STATES of America, Plaintiff,

v.

CABLE NEWS NETWORK, INC., Defendant.

No. 94–154–CR.

United States District Court, S.D. Florida.

Nov. 1, 1994.

Robert F. Dunlap, Special Prosecutor, Miami, FL, for plaintiff.

Bobby Lee Cook, Cook & Palmour, Summerville, GA, William B. Killian, Steel Hector & Davis, Miami, FL, Jack Dalton, Troutman Sanders, Atlanta, GA, for defendant.

## OPINION RE CRIMINAL CONTEMPT

HOEVELER, District Judge.

THIS CAUSE comes before the court upon the filing of an Information pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure charging the Defendant, CABLE NEWS NETWORK, INC. ("CNN"), with willfully violating this court's orders prohibiting it from publishing tape recorded conversations between Noriega and his defense team. It is alleged that on November 9 and 10, 1990, CNN broadcast such conversations acting in criminal contempt of the authority of the United States District Court in violation of 18 U.S.C. § 401(3). As this matter progressed towards trial, the court, though not required to do so in a case of this type, raised the question of whether counsel would prefer to have the matter proceed in another division. The suggestion was declined. As the matter got closer to trial, the court offered to empanel an advisory jury to try the issues of fact. Neither side accepted. On the morning trial was to begin, the court offered to empanel an advisory jury or, if desired, to empanel a regular jury to decide

the issues to be presented. Neither side accepted. The court then commenced a non-jury trial on September 13, 1994. The trial continued through September 16, 1994, when the court took the matter under advisement.

## BACKGROUND

On November 7, 1990, General Manuel Noriega filed an emergency motion seeking to enjoin CNN from broadcasting tape recordings of Noriega's attorney-client conversations. The recordings were made by officials at the Metropolitan Correction Center ("MCC") where Noriega was incarcerated. Noriega learned that CNN possessed at least one attorney-client conversation when, after asking Frank Rubino, Noriega's lead counsel, for an interview, CNN personnel appeared at Rubino's office and played a tape of a conversation between Noriega and certain members of his defense team. The conversation involved, among other things, a discussion of two potential government witnesses in Noriega's criminal prosecution. CNN notified defense counsel that it possessed seven tape recordings containing several of Noriega's conversations made from MCC, and that it intended to broadcast these conversations on national television.

On November 8, at 8:30 a.m., the court heard argument on the motion and subsequently entered a temporary restraining order prohibiting CNN from broadcasting Noriega's attorney-client conversations until the court could review the tapes to determine whether the broadcast of Noriega's conversations with his defense team would impair his right to a fair trial. Accordingly, the court ordered CNN to produce the tapes for the court's review prior to making a determination on the merits of Noriega's motion. CNN appealed the court's restraining order to the Eleventh Circuit the same day, arguing that the order imposed an unconstitutional prior restraint on publication of newsworthy information. Between approximately 6:30 p.m. on November 9th and 3:30 p.m. on November 10th, and while its appeal to the Eleventh Circuit was pending, CNN repeatedly broadcast the attorney-client conversation identified by Noriega in his motion for an injunction. It was stated at trial, on

September 13, 1994, that CNN broadcast the segment eleven times.

On Saturday, November 10, the Eleventh Circuit upheld the court's temporary injunction and ordered CNN to turn its tapes over to this court for *in camera* inspection. CNN then filed an application to stay this court's restraining order and a petition for writ of certiorari to the United States Supreme Court, both of which were denied on November 18, 1990. Two days later, CNN delivered copies of its tapes to the court.

In order to assist the court in reaching its determination, an order was entered directing the transcription and translation of the tapes by court-employed translators. On November 28, the court, at a brief hearing, received argument on the merits of Noriega's motion for injunction. Noriega's counsel withdrew the motion, stating that the issue was moot since CNN's tapes contained only one attorney-client conversation, which had already been broadcast by CNN. The government stated that it also had no objection to CNN's broadcast of its tapes.

The court's own review led to the conclusion that CNN's tapes contained *two* conversations falling within the attorney-client realm. As to the conversation already broadcast by CNN, the court agreed that the issue was moot and that a restraint on further publication of this conversation would serve no purpose. The court determined that the second conversation was so cryptic and disjointed that its publication could not reasonably be said to be prejudicial and certainly not of such a damaging nature as to justify a prior restraint. Accordingly, the court orally vacated its order restraining CNN from broadcasting Noriega's attorney-client conversations.

Subsequently, Special Attorney Robert Dunlap was appointed pursuant to Federal Rule of Criminal Procedure 42(b) to prepare an Order to Show Cause why CNN should not be held in criminal contempt for violating the court's order temporarily prohibiting the broadcasting of Noriega's attorney-client conversations. On March 30, 1994, CNN was charged by information with violating this court's order in Criminal Contempt of the authority of the United States District

Court for the Southern District of Florida, in violation of 18 U.S.C. § 401(3).

## ANALYSIS

Criminal contempt is a sanction that is used to assert the authority of the court. It is a form of judicial self-defense, imposed upon those who interfere with the orderly business of the court or who disobey a court order. *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 796–98, 107 S.Ct. 2124, 2131–32, 95 L.Ed.2d 740 (1987) ("The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority ...”). The power to hold a defendant in criminal contempt for disobeying an order of the court arises under 18 U.S.C. § 401, which states:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as— ... (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

■ To support a criminal contempt conviction for violating a court's order, three elements must be established. The government must prove:

1. that the court entered a lawful order of reasonable specificity;

2. that the order was violated; and

3. that the violation was willful.

*United States v. Robinson,* 922 F.2d 1531, 1534–35 (11th Cir.1991). In addition, criminal contempt is considered a "crime in the ordinary sense," and as such, a defendant must be afforded the constitutional protections required in all criminal proceedings. *United Mine Workers v. Bagwell,* —— U.S. ——, ——, 114 S.Ct. 2552, 2556, 129 L.Ed.2d 642 (1994). Thus, to sustain a conviction the government bears the burden of proving each of these three elements beyond a reasonable doubt. *United States v. Burstyn,* 878 F.2d 1322, 1325 (11th Cir.1989).

### 1. Specificity of the court's order.

■ To be found in violation of a court's order, that order must have been specific enough to have put the defendant on notice as to what actions the court was trying to prohibit. In this case, the court entered a restraining order prohibiting CNN from playing certain tape recorded conversations made by Noriega while a prisoner at MCC.

CNN argues that the court's order was either unclear or did not encompass the tape recorded conversation between Noriega and members of his defense team, Christina Machin and Frank Hawkins (Noriega–Hawkins tape), a portion of which CNN broadcast on November 9 and 10, 1990. CNN argues that the court's restraining order was limited to "privileged conversations," and that this conversation was not privileged because either Noriega or Rubino had waived that privilege. CNN further argues that it believed that the court had deferred to CNN the authority to determine which conversations between Noriega and his defense team were privileged and which ones were not.

■ The court rejects this tortured interpretation of its order. *United States v. Greyhound Corporation,* 508 F.2d 529, 532 (7th Cir.1974) (defendant may not avoid criminal contempt by tortured or twisted construction of the court's orders). The specificity of an order is a question of fact that must be evaluated in the context and setting in which it was entered. *Burstyn,* 878 F.2d at 1324. Thus, to determine the clarity of an order, the court should first examine the circumstances in which it was entered.

The court first entered a temporary restraining order at the request of Noriega's counsel after argument on the morning of November 8, 1990. As stated earlier, Noriega's request for an injunction had been prompted by CNN's playing for Noriega's counsel, Frank Rubino, the very tape that was later broadcast on November 9, 1990. CNN now argues that Mr. Rubino's outrage after hearing the tapes, and his listening to them a second time after which he did not immediately object to the proposed broadcast, constitute an irrevocable breach of General Noriega's attorney-client privileges; this, in spite of his vigorous opposition to the broadcast evidenced thereafter both by his calls to CNN and the filing of his Motion.

At the hearing on the request for an injunction, Noriega argued that the conversation between Noriega and Hawkins, at least, was privileged. *See, e.g.,* Hearing Transcript 11/08/90, page 7 ("There is no question, and ... I believe CNN will concede today ... that these conversations are protected by the attorney-client privilege. These are conversations by our client, General Noriega, to the staff of Frank Rubino ...").

At the end of the hearing on November 8th, the court explicitly ordered CNN not to disclose the contents of any tapes which were in CNN's possession until the court ruled at 6:00 p.m. that day. In response, CNN's attorney asked whether the court's order included "[a]ll tapes or simply any tapes which *allegedly* include attorney-client privilege?" Hearing Transcript 11/08/90, page 79, lines 24–25 (emphasis added). At this point in the proceeding, there was only one tape that Noriega had specifically alleged contained attorney-client information, the Noriega–Hawkins tape. No others had been played for Mr. Rubino. Thus, even if the court's order was restricted to prohibiting the playing of any "alleged attorney-client privileged" conversations as CNN's attorney suggested, the order would have precluded the playing of the Noriega–Hawkins conversation. The court went further, however, explaining that the court's restraining order:

would apply to any tapes that disclose the *attorney-client information.* If there are other tapes that don't have anything to do with the *attorney-client situation* I don't think they are before the Court. And you can do what you want to with them.

Hearing Transcript 11/08/90, page 80 (emphasis added).

In response to the court's statement, Mr. Rubino then asked whether the court was leaving it up to CNN to decide what was attorney-client privileged information and what was not. In response the court stated: "Well, I don't know that I have any choice under the circumstances...." Hearing Transcript 11/08/90, page 81. CNN argues that this statement represents the court's intention to defer to CNN the question of whether or not any particular statement was privileged. CNN's position, however, is un-

supported by the exchange which immediately followed that statement and by the total circumstances preceding the broadcast:

MR. RUBINO: Because I have heard only a portion of one tape. May I ask you to modify your order and restrict [CNN] from revealing the contents of any tape that involved General Noriega and his lawyers or their associates?

THE COURT: Well, in so far as the conversations are between General Noriega and the lawyers and their associates, that seems to me to come within the attorney-client privilege situation.

MR. RUBINO: I believe so too.

THE COURT: Yes. Other tapes I make no ruling on.

MR. RUBINO: We don't have a problem with that. Thank you, Your Honor.

Hearing Transcript 11/08/90, page 81. Thus, the court explicitly defined the boundaries of the restraining order to include any tape recorded "conversations ... between General Noriega and the lawyers and their associates...." From this colloquy, it is clear that the court's order encompassed at least the very taped conversation which was the impetus of the motion and to which Mr. Rubino referred, if not every conversation between Noriega and his defense team. The court was allowing CNN to broadcast taped conversations between Noriega and anyone but his defense team.

It is interesting to note that while today CNN claims that the court's order was unclear, CNN accurately reported the court's actions at the time. At 1:46 p.m. on November 8, 1990, CNN reported that:

The Judge in the case has ordered a temporary injunction against CNN to prevent us from airing any recordings of Noriega talking to his attorneys....

Government's Exhibit 6, page 500. Thus, CNN reported that it understood the injunction to prohibit CNN from playing any tapes with conversations between Noriega and his defense team.

The court reconvened at 5:55 p.m. that same day. The lawyers were immediately informed that the purpose of the hearing was

to extend the injunction issued earlier that day.

> In as much [sic] as ... CNN, may want to know what to do, I am entering a restraining order at least until tomorrow.... But I think they [CNN] ought to know that if those tapes are aired it will be in violation of the court's order.

Government's Exhibit 7, page 83. The court then announced its written order extending the "temporary injunction imposed on CNN at the hearing this morning ... until such time as the court can review the contents of the tape recordings in CNN's possession." Government's Exhibit 8, page 6. Thus, the first written order merely continued the restraint that had been imposed on CNN that morning. The court subsequently supplemented its order, further emphasizing that the court's position was not a decision on the merits, but rather a temporary injunction to last until a magistrate could review the tapes.

CNN argues today that the written restraining orders did not apply to the Noriega–Hawkins tape as the restraining orders only prohibited "recordings containing privileged telephone communications,"[1] and the Noriega–Hawkins tape did not contain privileged conversations. Moreover, CNN presses its point that the court intended to leave it up to CNN to decide what tapes contained privileged information.

As indicated, the court finds this interpretation of its order to be completely unconvincing. First, this limited interpretation of the court's order conflicts with CNN's own understanding of the order at that time. After the second hearing on November 8, 1990, CNN prepared a press release regarding the court's injunction which stated in part:

> The Judge, however, extended an order he issued earlier today which purports to enjoin CNN from telecasting tapes of *conversations between Noriega and his defense team.*

Government's Exhibit 9, page 509 (emphasis added). At this point, CNN clearly states that it understands that the court's prohibition applies to all conversations between No-

riega and his defense team. There is no indication that CNN understood the court's order to be limited to actually "privileged" attorney-client conversations or that the question of waiver for conduct never brought to the court's attention was in fact part of the court's thinking. Similarly, CNN's newscast on November 9, 1990 at 1:08 p.m. broadly describes the court's order as "prohibiting CNN from airing tapes containing telephone conversations between Manuel Noriega and his defense team." Government's Exhibit 13, page 523. CNN's final press release similarly described the court's restraining order as prohibiting "telecasts of the actual content of General Noriega's recorded conversations...." Government's Exhibit 18. These public statements indicate that CNN was aware that the court's order prohibited more than technically privileged information.

Second, such a limited interpretation ignores the order's stated purpose and the interests that the court was trying to protect. In the original order, it was manifest that the primary concern was not merely any violation of the attorney-client privilege that may have occurred. Instead, the court intended to "prevent the disclosure of information damaging to the defendant's case—information which, though damaging, is privileged." Government's Exhibit 8. In this way, the court characterized the problem as one involving the potential "conflict between Noriega's right to a fair trial and the First Amendment prohibition against prior restraint." Government's Exhibit 8. The court reasoned that, based on what was said to be contained on the Noriega–Hawkins tape, Noriega's right to a fair trial could be hampered by publication. The court concluded that absent some method of determining the factual issue, the potential harm to Noriega's right to a fair trial justified the restraining order.

> ... [I]t is impossible to determine, at this stage, the precise extent to which Noriega's right to a fair trial would be hampered by disclosure. What is known at this point is that at least some of the tapes contain discussions of witnesses, evidence, and cer-

---

1. The supplemental order stated that the "temporary restraint did not and do not apply to conversations which do not contain privileged attorney-

client communications." Government's Exhibit 16, pages 1, 2.

tain other aspects of Noriega's defense. Perhaps this alone is enough to sustain an interim injunction during the course of the trial.

Government's Exhibit 8, page 6. Thus, not only did the restraining order include the Noriega–Hawkins tape, but the order was based upon the court's understanding of what that tape contained.

In addition, CNN's contention that the court was trying to let CNN, itself, decide what tapes could be broadcast directly contradicts the process that the court outlined. CNN was directed to produce the tapes, which were to be reviewed by Magistrate Turnoff. Although the court did stay the order requiring CNN to produce the tapes, it did so to allow CNN to meaningfully pursue an appeal on the merits of the temporary restraining order. The suggestion that the stay of production of the tapes was in some way a signal to CNN that it was to decide the importance of those tapes is a self-serving twist at best. The court was simply and obviously attempting to protect CNN's first amendment position pending the Eleventh Circuit's determination of the merits of CNN's appeal. Such an appeal could have been rendered moot by the court's subsequent action once it had possession of the tapes. The very purpose of the temporary injunction was for CNN to allow *the court*, not CNN, to determine what attorney-client information would harm Noriega's right to a fair trial. *See* Government's Exhibit 16, page 3 ("The more efficient alternative would be for CNN to provide the specific conversations in its possession for expedited review.")

CNN also argues that the fact that the court held four hearings and issued two written orders during the two day period contributed to its alleged "confusion." The court's intent was to the contrary, however, as each hearing was held for the explicit purpose of explaining to the parties what the court was prohibiting CNN from doing and because CNN refused to turn over the tapes. Indeed, CNN had four opportunities at these hearings to raise waiver of the attorney-client privilege as an issue. Moreover, the emergency hearing held at 5:30 p.m. on November 9th was prompted by belated infor-

mation provided the court that CNN was going to play the Noriega–Hawkins tape regardless of the court's orders. At that hearing, the court explicitly admonished CNN, threatening contempt sanctions if it played the tape:

> Now, I want to make it clear that the order that I have stayed is only the order relating to the production of the tapes, that the order enjoining CNN from publishing those tapes, the temporary restraining order remains in effect, and that if they publish those tapes they will be doing so in contempt and violation of that order and in contempt of court.

Hearing Transcript 11/09/90, page 126. No mention of the alleged waiver argument was made at any of the four hearings; rather, CNN focused on the unconstitutionality of the court's order and its right to air the tapes if the court's prior restraint order was reversed. *See* Hearing Transcript 11/09/90, page 127 ("... if the order is reversed and on First Amendment ground (sic) that the contempt is reversed as well"). CNN's counsel also acknowledged that CNN was fully aware of the judges' position and that they had made their position fully known. Hearing Transcript 11/09/90, page 127 ("We understand the court's position, Your Honor. I believe we have stated ours"). At the 5:30 p.m. hearing, CNN had a full opportunity to state its position, but there was no mention of CNN's current argument that Mr. Rubino had waived General Noriega's privilege and as such playing these tapes was not a violation. As stated above, CNN argued that any contempt violation would be overturned when the restraining order itself was overturned. To say the least, it is disconcerting that CNN now asserts that the court's orders were so unclear that it was not aware that playing the tapes was a violation, when it assured the court on November 9, 1990, that it understood the court's position with respect to what the order required.

Moreover, CNN's awareness of the extent of the court's order was confirmed by its own telecast immediately following the hearing. During the 6:00 p.m. broadcast lead-in, the following exchange occurred:

Katherine Crier: Well John, CNN is about to air those very tapes. What action can the court take against CNN?

John Zarrella: Well, Judge Hoeveler apparently is aware that CNN will be airing those tapes momentarily and has told CNN attorneys that they risk contempt of court and other legal measures including monetary action against the network.

\* \* \* \* \* \*

Bernard Shaw: And just a little bit later on The World Today John Camp of our special assignment team with those very tapes CNN has been ordered not to broadcast.

Government Exhibit 20(b). It is ironic that CNN argues that its own reporting of the story should be ignored and disregarded as inaccurate. To the contrary, the court has the utmost respect for CNN's journalistic ability and has been impressed by the accuracy and completeness of its reporting.

Thus, as evidenced by CNN's own story, the court finds that the temporary restraining order was sufficiently clear to put CNN on notice that playing the Noriega–Hawkins tape would be a violation. It was clear to the court, to the litigants present, to the CNN reporters, to the 11th Circuit,[2] and to anyone in the American public who viewed the newscast, that the court had ordered CNN not to play the tape in question and that CNN intended to defy the court's order because it believed the order violated its First Amendment Rights.

Defendant, through its counsel, either concluded that the court was simply entering an order which was essentially unnecessary—giving defendant considerable running room (in which case no appeal was necessary) or that the order was clear and incorrectly prevented the broadcasting of non-privileged conversations and an appeal was necessary. Whatever the basis, defendant's lawyers were clear on the directions of the court and appealed immediately. The position taken

by the defense suffers from a paucity of logic. Whether counsel then concluded that the court's order was erroneous because of an incorrect conclusion regarding privilege or because it was clearly an unconstitutional prior restraint, it is apparent that counsel were clear on the directions of the order. So clear were the terms of the order that an appeal was taken immediately (November 8, 1990). The principal thrust of that appeal was the unconstitutionality of the court's directions.

The defense also argued that the court's second order (November 9, 1990) made more clear the right of CNN to decide the question of privilege and thus to broadcast the content of the tapes. This position scarcely requires response. Not only was the appeal not dismissed, CNN was taking no chances with that appeal and played the tapes the evening of November 9th. In the context of the attendant events of the two days in question, it is clear that the privilege waiver argument was a makeweight.

### 2. Violation of the court's order.

■ As discussed above, the court finds as a matter of fact and law that the restraining order explicitly precluded CNN from playing the Noriega–Hawkins tape. Moreover, CNN was put on specific notice that playing the Noriega–Hawkins tape would be a violation. Despite the express warnings by the court, CNN aired portions of the Noriega–Hawkins tape eleven times on November 8 and 9, 1990.

In any event, whether or not the Noriega–Hawkins tape was privileged is irrelevant in light of the fact that the order in question prohibited the publication of all tapes which contained attorney-client conversations and which were thus arguably privileged. The Noriega–Hawkins tape contained a conversation between Noriega and members of his defense team and involved discussions of two potential witnesses. Thus, the tape comes within the realm of this court's order because of its content and implicates the court's con-

---

2. In upholding this court's restraining order, the 11th Circuit held:

We have been advised that CNN, in disregard and defiance of the District Court's *explicit* restraining order, broadcast portions of some of the purported attorney-client communications. *U.S. v. Noriega*, 917 F.2d 1543, 1546 n. 5 (11th Cir.1990) (emphasis added).

cern over potential violations of Noriega's Sixth Amendment Right to a fair trial.

Even if the order could be narrowly construed as applying only to legally privileged attorney-client conversations, the court did not defer that legal determination to CNN. In fact, CNN counsel, Terry Bienstock, recognized that the order applied to any conversations that *could be* privileged when he asked the court if the restraining order applied to the contents of all the tapes or only those "*allegedly* includ[ing] attorney-client privilege?" Hearing Transcript 11/08/90, page 79 (emphasis added). CNN was fully aware that Mr. Rubino had repeatedly asserted that the conversations were privileged. Moreover, CNN did not dispute this assertion until after the Noriega–Hawkins tape had been played. *See, e.g.*, Government's Exhibit 17, Supplemental Memorandum to the 11th Circuit at page 19 ("[Noriega] seems to be concerned that there be (sic) an implied waiver of the attorney-client privilege. But any dispute on that subject lies between Noriega and the government, not with CNN and CNN's telecast of tapes already heard by persons not within the privilege [who] will have no claim on that dispute.")

In addition, the court rejects any argument that Mr. Rubino waived the privilege by identifying Noriega's voice on camera. It is a fundamental principle of law that only the client, not the attorney, may waive the attorney-client privilege. *Wigmore on Evidence*, § 2321 (1993 Supp.) Thus, an attorney may not waive the privilege without his client's consent. In this case, there is no evidence that Noriega himself waived the privilege or that he consented to Rubino's actions.

Instead, CNN argues that Rubino, by agreeing to play a portion of the tape on camera and to identify the speaker, "authoritatively waived" the privilege. This argument is without legal foundation. In support, CNN cites *In re von Bulow*, 828 F.2d 94, 101 (2d Cir.1987), a case in which the client challenged a district court's determination that his privilege had been waived. Despite CNN's assertions, that court did not hold that von Bulow's attorney had the authority to waive his client's privilege. In-

stead, the court concluded that von Bulow himself had impliedly waived the privilege by his own actions.

By allowing publication of confidential communications in his attorney's book *Reversal of Fortune*, petitioner was held to have waived his attorney-client privilege.... First, petitioner knew of, consented to, and actually encouraged attorney Dershowitz's plans to write a book providing an "insider look" into his case. Second, petitioner was warned before publication that such an act might trigger a waiver and, yet, took no active measure to preserve his confidences. Third, after publication, petitioner joined his attorney in enthusiastically promoting the book on television and radio shows. Based on these key facts, the district court determined that von Bulow had waived his attorney-client privilege.

*Id.* at 100. In *von Bulow*, the court actually emphasized the fact that "the privilege belongs solely to the client and may only be waived by him." *Id.* at 100. In the case before the bar, there is no indication that Noriega knew of or consented to Rubino's interview. In fact, there is no evidence that Noriega took any actions which could be construed as "impliedly" waiving his privilege.

CNN's reliance on *Drimmer v. Appleton*, 628 F.Supp. 1249 (S.D.N.Y.1986) is similarly unfounded. In *Drimmer*, a client failed to object to his attorney's in-court revelations regarding previously privileged conversations. The court held that the client's presence in the courtroom and his failure to object to the testimony operated as an implicit waiver of the attorney-client privilege. In this case, Noriega was not present at Rubino's interview and was not given the opportunity to object to Rubino's actions. Thus, Rubino's actions cannot constitute a waiver of Noriega's rights, because there is no indication that Noriega consented to the disclosure.

*3. Willfulness of the Violation.*

 In the criminal contempt context, willfulness is defined as "'a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation

of an order.'" *United States v. Robinson,* 922 F.2d 1531, 1535 (11th Cir.1991), *cert. denied, Jackson v. United States,* 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986) (quoting *United States v. Baldwin,* 770 F.2d 1550, 1558 (11th Cir.1985)). Willfulness has also been described as a volitional act done by someone who "knows or should reasonably be aware that his conduct is wrongful." *United States v. Greyhound,* 508 F.2d 529, 532 (7th Cir.1974) (quoting *United States v. Seale,* 461 F.2d 345, 368 (7th Cir.1972)). In determining whether or not a Defendant's conduct was willful, a court should consider the entire background behind the order. *Id.* at 532.

CNN argues that it lacked the requisite willfulness because it maintained a reasonable belief that its conduct did not violate the court's order. It further asserts that it maintained a reasonable belief that the court's order applied only to privileged conversations and that it reasonably believed that the Noriega–Hawkins tape either did not contain privileged material or that the privilege had been waived by Rubino's conduct. CNN asserts therefore that it was reasonable to assume that the airing of the Noriega–Hawkins tape would not constitute a violation.

Thus, CNN argues that if it failed to comply with the court's orders, its failure was a result of this reasonable, yet mistaken, construction of the court's order. CNN asserts that there is "no evidence that CNN ever understood it was violating the orders because CNN *and* its lawyers understood that CNN was acting within the proscriptions of the orders." CNN's Trial Memorandum, page 33. CNN argues that it lacked the requisite willfulness to be found in contempt because the violation of the court's order was based on a reasonable assumption.

The court finds CNN's argument specious and suggests it misrepresents the events as they occurred. I lay this not so much at the door of present counsel but more in relation to the information they have been provided. Contrary to current assertions, the court finds that the clear evidence shows CNN's actions were based upon a belief that the court's order was invalid. Thus, in voluntarily choosing to play the Noriega–Hawkins tape on November 9 and 10, 1990, CNN committed a volitional act which they [those for whom CNN will be responsible] knew was wrongful or recklessly disregarded circumstances which made that apparent.

In evaluating CNN's actions, it should be noted first that CNN President, Tom Johnson, acted as a responsible journalist. When CNN first obtained copies of the tape, nothing was broadcast until the voices on the tape were verified. In addition, Mr. Johnson consistently sought legal counsel as to CNN's right to play the tapes. Referring to his final discussion with the lawyers, Mr. Johnson stated:

> I think it was my third check of the day to make sure that I was behaving responsibly and legally within the context of your order ...

Trial Transcript, page 526.

In fact, at approximately 5:50 p.m. on November 9, 1990, CNN local counsel, Mr. Bienstock, conveyed to CNN the court's final admonition. With just minutes left before the story was to air, Mr. Johnson again asked for legal advice regarding CNN's authority to play the tapes. Considering the fact that the court had specifically warned CNN not to play the tapes, it is unfortunate that CNN's chief legal advisor, Mr. Pierson, did not exhibit the same degree of concern.

> Question: ... And following that colloquy with Mr. Bienstock, what did Mr. Johnson do, if anything, in regard to the question of telecasting it.
>
> Pierson: He raised again the question of whether CNN could telecast this actuality [the Noriega–Hawkins tape]. *It surprised me a little bit since I thought that matter had been laid to rest.*

Trial Transcript, page 206 (emphasis added).

■ Although CNN decided to play the tape upon the advice of its attorneys, such advice does not abrogate CNN's liability for willful misconduct. The majority of courts have explicitly held that good faith reliance on the advice of counsel does not constitute a defense to willful disobedience. *United States v. Remini,* 967 F.2d 754 (2nd Cir. 1992). *See also, United States v. Under-*

*wood,* 880 F.2d 612 (1st Cir.1989); *United States v. Monteleone,* 804 F.2d 1004, 1010 (7th Cir.1986) *cert. denied. Monteleone v. United States,* 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 759 (1987); *United States v. Armstrong,* 781 F.2d 700, 706 (9th Cir.1986); *United States v. Seavers,* 472 F.2d 607 (6th Cir.1973). Thus, it is not a defense to willfulness for CNN to claim that it was merely acting upon advice of counsel. A corporation acts through one or more of its employees. When considering the alleged criminal contempt of a corporation, no distinction will be made between or among the "group" which caused the act or acts which constitute the contempt. The judicial exposure which would exist in contempt cases, upon permitting the defense of lawyers' advice, is apparent.

CNN argues that these cases can be distinguished from the case at bar because the court's order used legal terminology, thus requiring a lawyer's advice. As a result, CNN argues that the court must look to the lawyers' conduct to determine whether they acted in good faith when they advised CNN that the Noriega–Hawkins tape was not privileged and thus outside the court's restraining order. CNN argues it did not willfully violate the court's order because its attorneys reached the conclusion that the tape was not privileged in good faith.

The court rejects this argument on several grounds. First, the court disagrees with CNN's legal distinction. Whenever an attorney advises his client regarding a court's order, implicit in that advice is a legal judgment concerning not only the legality of that order but also its scope and application to the client. *See, e.g., Monteleone,* 804 F.2d at 1010 (court rejected defense of good faith reliance upon advice of counsel that reading a prepared statement would comply with a court's order to testify). Thus, the general rule that an attorney's advice does not insulate a defendant from criminal contempt

should apply to CNN on the facts before the court.

Taking the several hearings in context, and giving particular attention to CNN's refusal to permit a review of the tapes by the court and the court's plain language before the broadcast on the evening of November 9th, there seems to be little question as to what CNN was ordered not to do.

I have little difficulty, in any event, in accepting the defendant's suggestion that the lawyers' conduct should be evaluated. Indeed, it is principally on the basis of that conduct and advice that the court's decision is based. A review of the testimony and the exhibits make it rather clear that CNN's attorneys felt that this court's orders were unconstitutional and that pursuant to the teaching of *Providence Journal,*[3] they could ignore the order and avoid contempt if, indeed, they were as right as they thought they were. They were not right and now cannot avoid the consequences by shifting the emphasis for their decision. A study of the development of the events at CNN, shown by the testimony and the exhibits, presents a most interesting demonstration of the desire to air a hot story—aggravated by the government's denials—leading to advice fitted to accommodate but weak on protection. Despite CNN's continued assertions to the contrary,[4] the court's restraining order was valid and has been upheld by the Eleventh Circuit. Thus, as candidly conceded by CNN, any violation based upon an assumption of invalidity constitutes contempt. *See* Trial Transcript, Closing, pages 575, 583 [QUESTION:] ("if [CNN] thought it violated the order, but they had a First Amendment right to do so ... would that be contemptuous in nature and I said, 'Yes, I agree with you.'") The court finds as a matter of fact and beyond a reasonable doubt that CNN primarily relied upon this assumption, and concludes that CNN willfully violated the order not to broadcast.

---

**3.** 820 F.2d 1342 (1st Cir.1986).

**4.** Despite the fact that the court's restraining order was specifically upheld, CNN has continued to assert its belief that this court, and the Eleventh Circuit, were wrong. *See* CNN's Trial Memorandum, page 23 ("Of course, even if limit-

ed to privileged attorney-client conversations, the order, in CNN's opinion, constitutes an unlawful prior restraint under the same authority"). This position is enlightening to the extent that it reflects CNN's principal position then and now.

In determining whether CNN's counsel knew or recklessly disregarded a clear instruction that playing the Noriega–Hawkins tape would be a violation, the entire background of the court's order should be considered. *Greyhound*, 508 F.2d at 532. Thus, the court may look beyond the two written orders and consider the numerous hearings and specific admonishments CNN received. At the final hearing before the tapes were played, the court explicitly warned CNN not to play the tapes:

> if they (CNN) publish those tapes they (CNN) will be doing so in contempt and violation of that order and in contempt of court.

Hearing Transcript 11/09/90, page 126. The defense concedes that CNN's local counsel, Mr. Bienstock, accurately conveyed this message back to CNN.

> [W]e (CNN) don't challenge the fact that Mr. Bienstock reported to us accurately [the court's] concerns the afternoon of Friday the 9th.... We were before the court. We were told through him essentially of your colloquy.

Trial Transcript, pages 560–561. Thus, CNN was accurately informed of the colloquy and the court's admonition.

Despite this explicit warning, CNN asserts three "different analyses [were] used to approach the question of the risk of playing the [Noriega–Hawkins tape]." Mr. Pierson's testimony, Trial Transcript, pages 199–200. CNN argues that its lawyers were acting in good faith when they concluded that: (1) the court's order prohibited only privileged conversation from being broadcast and this conversation was not privileged because Noriega did not have a reasonable expectation of privacy; (2) the order prohibited only privileged conversation from being broadcast and this conversation was not privileged because Mr. Rubino had "authoritatively waived" the privilege; and (3) even if the Noriega–Hawkins tape contained a privileged conversation, CNN's broadcast of the tape would only be a technical violation of a transparently invalid prior restraint, and thus any contempt charge could be challenged after the order was held to be unconstitutional. To determine whether CNN's counsel knew or should

have known that playing the Noriega–Hawkins tape was a violation, the court will examine each of these approaches in turn.

■ *A. The argument that Noriega's conversations were not privileged.* The attorneys' first argument is that the order did not prohibit this conversation from being aired because it was never privileged. It was argued that Noriega knew that the government was taping his conversations and thus he could not have had a reasonable expectation of privacy in his conversation with Hawkins. CNN further contends that, as a reasonable expectation of privacy is required for the privilege to attach, this conversation was not privileged. *See* Mr. Korn's Testimony, Trial Transcript, page 324 ("I made the judgment in my mind that this call was either never privileged ...").

As the government points out, however, such an interpretation of the court's order would render it entirely meaningless. From the evidence submitted, all were aware of MCC's standard taping procedures prior to entering its restraining order. The evidence also demonstrates that all of Noriega's phone calls were made with his knowledge of the taping procedure. Thus, the court, after hearing the evidence and the arguments presented at the hearings, had considered the possibility that all conversations made from MCC were not privileged, but had rejected that conclusion by entering its restraining order. The defendant has absolutely no basis for proceeding on the theory suggested above. In addition, CNN stipulated that all of the tapes in its possession came from MCC. Government's Exhibit 7, page 99 ("I represent to the court that these tapes were conversations at MCC"). Thus, if the Noriega–Hawkins tape was excluded because Noriega had waived his privilege when making the telephone call, then all of the tapes in CNN's possession would have been excluded. CNN would have been able to play any tape that it wanted. This interpretation implies that, although the court entered two written orders and held four hearings, it did not actually intend to prohibit CNN from doing anything. Under this analysis, the court's order would have been meaningless. This interpretation leads to such an illogical result

that one wonders if it was advanced in good faith.[5]

**■** *B. The argument that Attorney Rubino waived any privilege.* CNN counsels' second argument is that Rubino waived the privilege by agreeing to play a portion of the tape on camera. Several CNN witnesses asserted that this was the primary motivation behind the decision to publish the tapes. *See, e.g.,* Trial Transcript, pages 186–213 (Pierson); 325 (Mr. Korn testified that he "felt that this conversation was not privileged, and that the Judge's order, as supplemented on the 9th, was crystal clear with respect to that"); and 516 (Mr. Johnson testifies that potential waiver of privilege and invalid prior restraint analyses were main factors in CNN's decision).

As discussed in the preceding section, there is no evidence that Attorney Rubino had the authority to waive Noriega's privilege or that Noriega himself had consented to Rubino's actions. Thus, there is no foundation for the assertion that Mr. Rubino had "authoritatively" waived the defendant's privilege, and such an argument could not, in any way, support a decision to disobey an otherwise clear court order. In fact, CNN's counsel admitted that such an assertion was not adequately supported by the facts.

THE COURT: Did you learn that a lawyer does not have the right to waive his client's privilege without the consent of the client?

MR. PIERSON: I believe that's correct.

THE COURT: You didn't know it at the time?

MR. PIERSON: I did know it at the time.

THE COURT: And did Frank Rubino tell you that he had the authority of his client to waive the privilege?

MR. PIERSON: He did not express that, Your Honor.

Trial Transcript, page 256.

Indeed, the very next day Mr. Rubino called CNN's offices to demand that they *not* play the tapes. If there was any uncertainty

about the defendant's position after that, it was eliminated by General Noriega's promptly filed motion. CNN's response that once waived the privilege cannot be reasserted misses the point. It was crystal clear under the attendant circumstances that Mr. Rubino had not "authoritatively" waived Noriega's privilege.

The court concludes that CNN's argument is without a proper factual foundation. Without any facts to indicate that General Noriega consented, CNN's counsel should not have, in good faith, determined that Mr. Rubino's actions constituted a waiver.

As indicated, I reject CNN's argument that Mr. Rubino's waiver provided a good faith basis for disobeying the orders in question. I conclude, with little hesitation, that the primary basis for disobeying the order was the attorneys' belief that the court's order was patently invalid and that playing the tapes would only be a technical and subsequently defensible violation of that order.

**■** *C. The argument that the court's order was transparently invalid.* The court finds, as a matter of fact, that the primary reason, indeed the motivating reason, CNN decided to publish the tapes was its belief that the court's order was transparently invalid. Although several witnesses testified that this was not the primary basis for their belief that CNN could publish the tapes, the evidence regarding CNN's actions at that time does not comport with any other justification.

First, CNN's public statements on November 8 and 9, 1990 consistently emphasized CNN's opinion that the court was in error and that it had the right to defy the court's order. For example, on the evening of November 8, 1990, Mr. Johnson issued a public statement in which he stated that "[CNN] believe[s] the restraining order issued against CNN is patently unconstitutional.... CNN is confident that Judge Hoeveler's order is invalid...." Government's Exhibit 9, page 509. Similarly, on the morning of No-

---

5. It should be noted that Mr. Pierson, CNN's senior legal advisor, indicates that he relied primarily upon Rubino's waiver and secondarily upon the *Providence Journal* analysis, with al-

most no emphasis given to the argument that Noriega waived his privilege. *See* Pierson's Confidential Communication, Government's Exhibit 32, page 50.

vember 9, 1990, CNN issued the following statement:

> CNN's attorneys advise us that the Miami court's order against telecast of the actual content of the tapes is an unconstitutional prior restraint, and that *we have a right to air that content* as we pursue appellate correction of the District Court's error. *If CNN determines that tape contents* or other material in this story *is newsworthy, it will be reported.*

Government's Exhibit 12, page 559 (emphasis added). Neither of these two statements mention CNN's waiver argument. Further, one would look vainly in the record of the hearings in November 1990 to find mention of the Rubino waiver. Moreover, the latter statement emphasizes CNN's belief that it had the right to decide whether or not to play the tapes based only upon its own determination of the tape's newsworthiness. CNN's expressed intent to defy the court's order, without any mention of either waiver argument, could have only been based upon its belief that the order was invalid.

CNN repeated its intent to defy the court's order in a public statement released at approximately 4:00 p.m. on the afternoon of November 9, 1990. In that press release, CNN unequivocally stated its position that the court's order was unconstitutional and that it would play the tapes.

> CNN considers the District Court's Orders against telecasts of the actual content of General Noriega's recorded conversations are unconstitutional prior restraints. Legal counsel has advised CNN that it has the right to air that content while we pursue an appeal in the U.S. Court of Appeals for the Eleventh Circuit in Atlanta. We will do so.

Government's Exhibit 18. Again, this statement makes no mention of either Noriega's or Rubino's alleged waiver of the privilege. Instead, CNN emphasizes its belief that it has the right to air the tape's content despite the restraining order. It is undisputed that both Mr. Pierson and Mr. Johnson approved this statement and that it was repeated two hours later during the actual broadcast of the Noriega–Hawkins tape.

Finally, during the actual broadcast of the tape, CNN anchors described CNN as acting in violation of the court's order.

> Bernard Shaw: And just a little bit later on The World Today John Camp of our special assignment team with those very tapes CNN has been ordered not to broadcast.

Government's Exhibit 20(b). Although CNN argued that this introduction was not approved by anyone and did not accurately reflect CNN's official view, CNN conceded that the introduction was substantially the same as the official position taken by CNN in its press release. Mr. Johnson's Testimony, Trial Transcript, page 524 (COURT: "[I]s there really any difference in the substance?" MR. JOHNSON: "Not particularly ...").

CNN argues that the above statements do not reflect its legal position. However, before its large viewing public, CNN announced its intention to disregard a Federal Court order. Can we seriously conclude that these statements were made without considerable deliberation? Clearly not. And the record fully supports such a conclusion. If, indeed, the primary bases were some other than suggested, the public, before whom such defiance was paraded, has never heard it— nor had this court in November of 1990.

In addition to CNN's public statements, other substantial evidence shows that CNN's own attorneys were relying on the potential invalidity of the court's order. Mr. Pierson, CNN's primary outside legal counsel, admits that CNN was at least "partially relying" on this theory. *See* Pierson's Confidential Communication, Government's Exhibit 32, page 50.

As Mr. Pierson's memorandum was prepared in January of 1991, after the United States Supreme Court had rejected the CNN petition for certiorari, I place little emphasis on the self-serving conclusions therein but more on those which, in today's setting, are revealing. For example, I note the rather significant comments regarding the participation of one of CNN's younger attorneys in juxtaposition with the trial testimony regarding that participation.

On one of the scripts for the November 9th airing, there is a note on the lower part, in handwriting, "We [CNN] are technically violating the order" (Government's Exhibit 14, page 532).[6] This was after the attorney had participated in reviewing the tapes for the 6:00 p.m. broadcast on November 9th.

The explanation for the damaging note is disappointing. It was the testimony not only of the more experienced counsel (then advising CNN) but of the "inexperienced" lawyer, that she was brought into this fast-moving problem at the last minute, and from Mr. Pierson, that she did not have significant experience in the First Amendment field (Pierson Testimony, Trial Transcript, page 239).

The record indicates otherwise, however, that the young attorney was more involved than this testimony would indicate. At least as early as October 31, more than a week before this incident arose, Mr. Pierson briefed the attorney on the legal issues involved in this case.

> I did, however, dictate a memorandum to ... and [the young attorney]. I do not recall whether I sent this memorandum. Even if it was not sent, I feel certain that I conveyed its substance, *particularly my preliminary legal views*, at least to [the young attorney].

Pierson's Confidential Communication, Government's Exhibit 32, pages 10–11. Although the lawyers may have forgotten about this specific prior briefing and other contacts on this problem, the court is confident that under Mr. Pierson's more "experienced" guidance, the assisting lawyer would have been more than able to draw her own preliminary legal conclusions.

In addition, until just minutes before the tape was to be played, both Mr. Waggoner and Mr. Bienstock believed that the primary justification for playing the tapes was CNN's argument that the court's order was an invalid prior restraint. *See, e.g.,* Mr. Waggoner's

Testimony, Trial Transcript, page 133 ("Dave Kohler and I were both concerned ... that perhaps there needed to be more time for the Eleventh Circuit to consider the prior restraint in order for the *Providence Journal* decision to apply.") In fact when first informed of CNN's privilege argument just minutes before the tape aired, Mr. Bienstock exclaimed "I like it." Pierson's Confidential Communication, Government's Exhibit 32, page 50.

Thus, the court finds as fact that CNN's public statements, the actions of the attorneys at the time, and the testimony taken at trial demonstrate that CNN decided to air the show primarily because it believed that it was violating an invalid court order. CNN has conceded that even a good faith belief that the court's order was invalid does not negate willfulness. Therefore, the court finds that CNN exhibited the requisite degree of willfulness when it voluntarily decided to play the Noriega–Hawkins tape knowing that it was in violation of the court's restraining order.

## CONCLUSION

CNN has emphasized that in contemplating a contempt sanction, the court should consider the importance of the press's First Amendment responsibility to bring out government misconduct. *See, e.g.,* Trial Transcript, page 587 ("a relevant factor to keep in mind, [is] that CNN was playing out its role as part of the media ..."). In particular, Mr. Johnson testified:

> I always felt that one of the most fundamental responsibilities that we have under the First Amendment is to report on possible government misconduct.

Trial Transcript, page 460.

The court fully recognizes the importance of this responsibility. The court has repeatedly stated its strong belief in the value

---

**6.** The young attorney who prepared the note testified that this was actually only one-half of a note, and that she had intended to write *"What if we are technically violating the order? We are not."* Trial Transcript, page 281 (emphasis added). The court recognizes that it has been almost four years since the events occurred and

that many memories may have dimmed over time. Thus, the court is unpersuaded by the half-note theory and the young attorney's testimony, finding instead that her notes at that time are a more accurate representation of her actual legal conclusions.

of the First Amendment, and in fact urged CNN to continue to report the fact that the government had taped these conversations. *See* Government's Exhibit 5, page 77. CNN, however, had already revealed the potential government misconduct. The intense pressure to play the tapes was actually coming from other news organizations, challenging CNN to show them the tapes or "where's the beef." *See, e.g.,* Trial Transcript, pages 513 and 278. While such circumstances may be relevant to other aspects of this contempt proceeding, they do not justify the action taken by defendant. The 11th Circuit has held that, even when a court's order is ultimately deemed to be invalid, the collateral bar rule requires parties to follow that order.

> People simply cannot have the luxury of knowing that they have the right to contest the correctness of the judge's order in deciding whether to willfully disobey it.

*In Re Novak,* 932 F.2d 1397, 1401 (11th Cir.1991) (quoting *United States v. Dickinson,* 465 F.2d 496, 509 (5th Cir.1972)).

In view of the conclusions set forth, I am moved to add that CNN is to be generally commended for its usually very competent and professional reporting, reflecting its ethical leadership. That view, however, cannot change the result here. I would add further that counsel for both sides, at the trial of this contempt action, presented the evidence and argued the issues in a most professional manner. Unfortunately for CNN counsel, they were weighed down with the baggage of the past making the trip to vindication most difficult.

I am ever mindful of the importance of an essentially unfettered press and the mandates of the First Amendment. But I must also be mindful of the vital importance of compliance with orders of the court. As is demonstrated regularly, not all District Court orders are correct. Those which are not can and should be corrected by appeal, not by the willfulness of those who disagree with a court's opinion. Without an unyielding adherence to this principle, the system could not survive.

The thin but bright line between anarchy and order—the delicate balance which ultimately is the vital protection of the individual and the public generally—is the respect which litigants and the public have for the law and the orders issued by the courts. Defiance of court orders and, even more so, public display of such defiance cannot be justified or permitted.

Because the court has determined that the Government has proved beyond a reasonable doubt that CNN knowingly and willfully violated the court's restraining order, it is the judgment of this court that CNN is guilty of the charges set forth in the contempt Information. CNN is ordered to appear for the imposition of sanctions and final judgment at 9:30 a.m. on Friday, December 9, 1994.

DONE and ORDERED.