# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-12-00134-CV

---

**In re Richard J. McIntyre**

---

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relator Richard J. McIntyre filed a petition for writ of mandamus alleging that the district court abused its discretion by ordering him to produce documents containing information protected by the attorney-client and work-product privileges and to appear for a deposition permitting inquiry into privileged matters. For the reasons that follow, we will conditionally grant the writ.

## BACKGROUND

The challenged order stems from a motion to compel in a Texas suit filed by real-party-in-interest Austin Manufacturing Services, Inc. (AMS) against Ben Porter, David Chessler, and Scott Bradford (Defendants). AMS's suit alleges that Defendants, as senior management of GPS Industries, Inc. (GPSI), made false representations and willful nondisclosures inducing AMS to continue manufacturing and shipping golf-cart mounted global-positioning systems to GPSI and its customers when GPSI knew it would be unable to pay AMS and when Defendants planned to take GPSI into bankruptcy. AMS sought discovery to determine the earliest date that Defendants began pursuing bankruptcy protection for GPSI.

McIntyre, a Florida attorney and nonparty to AMS's suit, served as GPSI's counsel for its Chapter 11 bankruptcy proceeding in Tampa.[1] AMS served McIntyre with discovery, including requests for production and a deposition notice with subpoena duces tecum, requiring him to appear for his deposition in Dallas and to produce documents responsive to six requests that, in GPSI's view, infringed on the attorney-client and work-product privileges. McIntyre filed a motion to quash and for protective order but produced approximately 980 pages of documents to AMS. McIntyre also had his deposition taken in Tampa. At the beginning of his deposition, McIntyre asserted the existence of an attorney-client privilege between himself and GPSI and between himself and GPSI's successor, GPS Industries, LLC (GPSIL), and a work-product privilege for work performed in connection with the bankruptcy case. McIntyre declined to answer certain questions—including when he was first contacted by GPSI for legal advice associated with the bankruptcy—asserting that GPSIL, as GPSI's successor and current holder of the privilege, had not authorized him to disclose the requested information.

The trial court held a hearing on AMS's motion to compel and McIntyre's motion to quash and for protective order,[2] resulting in the "Order Granting Motion to Compel Production of Documents of Non-Party Richard McIntyre." The order required McIntyre to produce documents concerning his engagement as GPSI's bankruptcy counsel, such as billing statements and invoices,

---

[1] The Florida Bankruptcy is styled *In re GPS Industries, Inc.*, Case No. 8:09-bk-16766-CPM, in the United States Bankruptcy Court, Middle District of Florida, Tampa Division. McIntyre asserts that GPSI sold "substantially all of its assets" via the bankruptcy to GPS Industries, LLC, which bought the assets as a "going concern" and assumed control of GPSI's operations.

[2] The trial court's order does not address McIntyre's motion to quash and for protective order but the relief granted to AMS effectively denied the competing relief that McIntyre sought.

including specifically an invoice that he reviewed during his deposition.[3]  However, the order allowed McIntyre to redact information protected by the attorney-client privilege—including the substance of any communications between GPSI and McIntyre—from the documents that he produced.  The court also ordered McIntyre's deposition to be taken at his office in Tampa, during which AMS could ask him about "non-privileged" matters, including "the date [he] was first retained or consulted, the circumstances regarding such engagement or consultation, any meetings, persons present at such meetings, length of meetings, and dates and times of meetings."

Seeking clarification about the privileged documents and information excluded from the order, McIntyre tendered redacted billing statements to the court (and an unredacted version for in-camera review) and asked whether his redactions complied with the court's order.[4]  McIntyre also anticipated that he would be asked some variation of the following questions at his deposition, and requested the court's consideration of whether an assertion of the attorney-client privilege as to the italicized portion of the questions would be consistent with the court's order:

1. When did you first consult with GPSI *concerning bankruptcy*?

2. When did you first consult with GPSI *about potentially filing bankruptcy protection on behalf of GPSI*?

3. When did GPSI engage you *to represent it in pursuing bankruptcy protection*?

---

[3]  The trial court's order also required McIntyre to produce engagement letters or fee agreements (particularly for engagement as GPSI's bankruptcy counsel) and communications with Falconhead Capital, LLC, a private-equity firm that bid on GPSI's assets on behalf of GPSI, LLC. McIntyre states that he is unaware of any such engagement letters or fee agreements, and because he has complied with the order to produce his communications with Falconhead Capital, he does not contest that portion of it.

[4]  We have also reviewed the unredacted billing statements that were filed under seal.

4. When did you first start working on *pursuing bankruptcy protection for GPSI*?

In a letter to the parties, the trial court responded that all but three of the redacted billing entries were discoverable in unredacted form and that all four of the anticipated deposition inquiries were permissible. McIntyre then filed this petition for mandamus.

**ANALYSIS**

To obtain mandamus relief, relator must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Southwestern Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004)). A party has no adequate remedy by appeal when the trial court erroneously orders the disclosure of privileged information. *In re Perry*, 60 S.W.3d 857, 862 (Tex. 2001) (citing *TransAmerican Natural Gas Corp. v. Flores*, 870 S.W.2d 10, 12 (Tex. 1994)).

This case implicates both Texas and Florida law, presenting a potential choice-of-law issue. However, the parties agree that Florida law applies to this dispute because it is the state with the most significant relationship to the communications that are alleged to be privileged. *See Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 647 (Tex. 1995) (noting that Restatement directs courts to identify state with most significant relationship to communication when determining whose law of privilege should apply) (citing Restatement (Second) of Conflict of Laws § 139 & cmt. e (1988)). McIntyre argues in three issues that Florida law prohibits mandatory disclosure of the information that the trial court ordered to be produced, that he did not "waive" the attorney-client privilege under Texas Rule of Evidence 612 by reviewing a particular attorney's fee invoice during a break at

4

his deposition, and that he is not using the attorney-client privilege "offensively." We address each argument in turn.

**Attorney-client privilege**

Florida Statute section 90.502 sets forth the "lawyer-client privilege," which provides in relevant part that:

A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of legal services to the client and those reasonably necessary for the transmission of the communication.

A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

The privilege may be claimed by: the client; a successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence; or the lawyer, but only on behalf of the client. The lawyer's authority to claim the privilege is presumed in the absence of contrary evidence.

Fla. Stat. § 90.502(1)(c), (2), (3)(a),(d), (e) (2011); *cf.* Tex. R. Evid. 503. Similarly, Rule 4-1.6 of the Florida Rules of Professional Conduct states that unless certain exceptions apply, "[a] lawyer shall not reveal information relating to representation of a client . . . unless the client gives informed consent." Fla. R. Prof. Conduct 4-1.6(a).

McIntyre argues that the information the trial court ordered him to produce (e.g., unredacted billing reflecting when GPSI first consulted him as bankruptcy counsel, when he consulted with GPSI about filing for bankruptcy protection, and when GPSI engaged him to

5

represent it in pursuing bankruptcy protection) is "information relating to representation of a client" under Florida Rule of Professional Conduct 4-1.6. He contends that because GPSIL has not consented to a waiver of the attorney-client privilege by McIntyre, and because none of the rule's exceptions apply, he is prohibited from supplying the requested information to AMS. AMS responds that mandamus relief is improper because the existence and structural framework (i.e., "external trappings") of an attorney-client relationship—including the date of an attorney's consultation and billing information—is not privileged because it does not seek the substance of any legal advice.

The parties rely primarily on three decisions to establish whether AMS's inquiry about the date of McIntyre's initial consultation or engagement as GPSI's bankruptcy counsel seeks the substance of their communications or merely "external trappings" of the attorney-client relationship. *See Thompson v. Cincinnati Ins. Co.*, No. 3:10cv318/RS/EMT, 2010 U.S. Dist. LEXIS 123948 (N.D. Fla. Nov. 9, 2010); *Ferrari v. Vining*, 744 So.2d 480 (Fla. 3d DCA 1999); *Burt v. Government Emps. Ins. Co.*, 603 So.2d 125 (Fla. 2d DCA 1992). McIntyre relies on *Ferrari*, in which a client sued Vining, her former lawyer, for malpractice and Vining attempted to prove a limitations defense by deposing the client's new counsel. *See Ferrari*, 744 So.2d at 481. Vining obtained a trial court order directing new counsel "to submit to a deposition . . . for inquiry as to the advice given to plaintiffs regarding [Vining's] alleged malpractice." *Id*. Citing Florida Rule of Professional Conduct 4-1.6, the court held that Vining was not entitled to depose new counsel to determine when the client first spoke to new counsel about the legal malpractice claim. *Id*. at 481-82; *see S & S Invs. v. Payless*, 10 So.3d 699, 703 (Fla. 4th DCA 2009) (distinguishing nonprivileged communications from Ferrari's privileged discussions with new counsel); *see also In re Lentek Int'l*, No. 6:03-bk-08035-KSJ, 2006 Bankr. LEXIS 2536, at * 9 (Bankr. M.D. Fla. Sept. 12, 2006) (citing

6

*Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) and noting that "billing and time records which also reveal litigation strategy or the specific nature of the services provided, such as entries describing particular areas of the law researched by an attorney, do fall within the protection of the [attorney-client] privilege"). Here, as in *Ferrari*, AMS seeks to support a legal theory by using the deposition (as well as detailed billing records) of a nonparty lawyer to determine when a client first spoke to that lawyer about a certain type of legal action.

AMS contends that it seeks only external trappings of the attorney-client relationship, relying on *Thompson* and *Burt*. In *Thompson*, a subpoena duces tecum was directed to a nonparty attorney, seeking production of records reflecting "the date(s) and time(s) of meetings, conferences and/or telephone calls with" his client during a specified time frame. *Thompson*, 2010 U.S. Dist. LEXIS 123948, at *6. Because none of the requested information disclosed the substance of any attorney-client communications, the court ruled that it was not privileged and was discoverable. *See id.* at *18-19. Unlike the orders at issue in *Ferrari* and this case, the disclosure sought only a general class of information, revealing only the fact of the meeting. In *Burt*, a party was asked at her deposition when she obtained counsel, but she refused to answer and asserted the attorney-client privilege. *See Burt*, 603 So.2d at 125. Rejecting her assertion of the attorney-client privilege, the court held that the question did not infringe upon the privilege set forth in Florida Statute section 90.502. *Id*. The question at issue in *Burt* is distinguishable from AMS's inquiry to McIntyre because the former sought only the underlying fact of when the client obtained counsel generally, not as to any particular legal protection or substantive legal advice.[5]

---

[5] McIntyre additionally points out that the information AMS seeks may allow the jury to draw incorrect inferences about Defendants' desire and instructions to McIntyre to file bankruptcy.

7

Here, AMS does not merely seek the basic fact of what date McIntyre had his initial consultation with GPSI generally; rather, AMS seeks unredacted billing invoices and testimony revealing McIntyre's first *bankruptcy* consultation with GPSI.[6] Because this inquiry delves into the substance of communications between McIntyre and GPSI on a specific topic, it is privileged from disclosure and the trial court's order cannot stand on this basis. *See Hagans v. Gatorland Kubota, LLC*, 45 So.3d 73, 76 (Fla. 1st DCA 2010) ("The attorney-client privilege exists to protect not only the giving of professional advice, but also the giving of information to the lawyer to enable him to render sound and informed advice.") (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 390 (1981)).

We now consider whether the trial court's order is supported by AMS's alternative arguments concerning Texas Rule of Evidence 612 and "offensive use" of the privilege.

**Texas Rule of Evidence 612**

McIntyre and AMS join issue as to whether his review of an invoice to GPSI during a break at his deposition constituted a waiver of the attorney-client privilege. AMS contends that he used the invoice to refresh his recollection for purposes of testifying when his deposition resumed, and as such, he waived any applicable attorney-client privilege for the invoice. *See* Tex. R.

---

Dispelling such inferences would require disclosure of the content of communications between GPSI and McIntyre. For instance, if AMS discovered that on a certain date GPSI had a discussion with McIntyre "about filing bankruptcy," Defendants might have to waive the privilege to clarify what the lawyer advised and whether he advised GPSI against filing bankruptcy at that time.

[6] McIntyre does not object to producing his redacted billing statements and invoices or to appearing for a deposition to discuss when GPSI spoke with him generally, retained him generally, and who attended such meetings.

Evid. 612.[7]  However, because the parties agreed that Florida privilege law applies, Florida Statute section 90.502—the procedural equivalent of Texas Rule of Evidence 503—governs when a document protected by attorney-client privilege may be subject to disclosure.  *Cf. In re Chevron Phillips Chem. Co.*, No. 09-06-470 CV, 2006 Tex. App. LEXIS 9186, at *2 (Tex. App.—Beaumont Oct. 24, 2006, orig. proceeding) (mem. op.) (noting Rule 503 not Rule 612, describes circumstances in which document protected by attorney-client privilege may be subject to disclosure).

Further, as McIntyre notes, the privilege belongs to GPSI's successor GPSIL, which purchased substantially all of GPSI's assets as a going concern and assumed control of GPSI's operations, and McIntyre may not waive the privilege unilaterally.  *See United States v. Cable News Network, Inc.*, 865 F.Supp. 1549, 1557 (S.D. Fla. 1994) (concluding that attorney cannot waive attorney-client privilege without client's consent); *see also* Fla. Stat. § 90.502(3)(d) (providing that attorney-client privilege may be claimed by client's "successor"); *NCL Corp. v. Lone Star Bldg. Ctrs., Inc.*, 144 B.R. 170, 174 (S.D. Fla. 1992) ("The right to assert the attorney client privilege is an incident of control of the corporation and remains with the corporation as it undergoes mergers, takeovers, and name changes.").  GPSIL has not given McIntyre consent to waive the attorney-client privilege, and his actions alone did not do so.  Accordingly, AMS's argument that Texas Rule of Evidence 612 functioned to waive the attorney-client privilege under Florida law is unpersuasive.[8]

---

[7]  AMS's brief in support of its motion to compel did not address Texas Rule of Evidence 612.  It is unclear from the record whether this ground was argued to the trial court.

[8]  Because we are persuaded that Rule 612 is inapplicable on these grounds, we need not address the additional arguments that Rule 612 is inapplicable because McIntyre did not review the invoice "while testifying" and alternatively, if Rule 612 did apply, it would waive privilege only

**"Offensive use" of attorney-client privilege**

McIntyre and AMS further join issue as to whether McIntyre is using the attorney-client privilege as both a "sword and a shield," making offensive use of the privilege. However, "offensive use" of the attorney-client privilege requires a showing that the party asserting the privilege is also making a claim based on the privileged matter or seeking "affirmative relief." *See GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987) ("It is the rule in Florida that a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege."); *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) (holding that waiver of privilege by offensive use requires proof that party asserting privilege seeks affirmative relief, that privileged information sought is not merely relevant but potentially outcome determinative of cause of action, and that disclosure of confidential communication is only means for aggrieved party to obtain that evidence). Here, neither McIntyre, GPSI, nor GPSIL is a party to the underlying suit, and none of them are making any claim against or seeking affirmative relief from AMS. In the absence of such evidence, AMS cannot establish its claim of "offensive use" of the privilege. *See Davis*, 856 S.W.2d at 163 (noting that if any element of "offensive use" is lacking, "the trial court must uphold the privilege").

Based on this record, we conclude that issuance of the order and clarifying letter compelling McIntyre to produce almost entirely unredacted billing invoices to AMS and appear at a deposition to answer questions about when GPSI first consulted with him about bankruptcy, when

_____

for the single invoice that he reviewed during a break in his deposition. *See* Tex. R. App. P. 47.1.

10

GPSI engaged him to pursue bankruptcy protection, and when he commenced work in pursuit of GPSI's bankruptcy protection was an abuse of the district court's discretion for which McIntyre lacks an adequate remedy by appeal.

## CONCLUSION

Having concluded that issuance of the order, coupled with the clarifying letter, was an abuse of the district court's discretion and that McIntyre lacks an adequate remedy by appeal, McIntyre's petition for writ of mandamus is conditionally granted. *See* Tex. R. App. P. 52.8(c). The writ will issue only if the district court fails to vacate or modify the underlying order in accordance with this opinion.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Filed:   August 31, 2012

11